IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES D. IZAC,

        Petitioner,

v.                                                         Civil Action No. 3:08CV93
                                                         Criminal Action No. 3:02CR58
UNITED STATES OF AMERICA,          (JUDGE BAILEY)

        Respondent.

**REPORT AND RECOMMENDATION
THAT §2255 MOTION BE DENIED**

**I. INTRODUCTION**

On May 21, 2008, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] Petitioner then petitioned the United States Court of Appeals for the Fourth Circuit for permission to file a Second or Successive Application for Relief Under 28 U.S.C. § 2255. Without a response from the Fourth Circuit, petitioner filed a Second Motion Under 28 U.S.C. § 2255 on June 9, 2008.[2] By Order dated June 13, 2008, the United States Court of Appeals for the Fourth Circuit denied petitioner's Motion to File a Second or Successive Application for Relief Under 28 U.S.C. § 2255, noting that because petitioner's initial § 2255 is pending, leave to file a second or successive motion is premature.[3]

On June 23, 2008, petitioner filed a Motion to Appoint Counsel.[4] The Government was

---

[1]Docket No. 136

[2]Docket No. 141

[3]Docket No. 142

[4]Docket No. 143

ordered to respond on June 24, 2008.[5]  The Government filed its Response on July 18, 2008.[6]  Petitioner filed a Reply on August 4, 2008.[7]

## II. FACTS

### A. Conviction and Sentence

On December 4, 2002, petitioner was charged in a one-count indictment with being a Felon in Possession of a Firearm in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) and (e).  On February 4, 2003, a superseding indictment was returned against petitioner, fixing the date of offense.  The Government filed a motion in limine on May 21, 2003 to prohibit petitioner from introducing a justification defense.  The Court held an evidentiary hearing on the matter on June 10, 2003.  At the conclusion of the hearing the Court ruled that petitioner was not entitled to assert a justification defense at trial.

On June 10, 2003, petitioner entered into a plea agreement with the Government, and entered a conditional plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.  Finding that a guilty plea conditioned on defendant's ability to appeal the non-case-dispositive issue of whether defendant's proffered justification defense was properly precluded was an invalid plea, the Court of Appeals for the Fourth Circuit remanded petitioner's case for trial.

Accordingly, a jury trial was conducted on December 19 and 20, 2005.  On December 20, 2005, the jury returned a guilty verdict.  On April 18, 2006, the petitioner appeared before the Court for sentencing.  After considering several factors, including the circumstances of both the

---

[5] Docket No. 145

[6] Docket No. 146

[7] Docket No. 148

crime and the defendant, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 180 months imprisonment.

**B.** **Appeal**

On April 24, 2006, petitioner filed a notice of appeal. On July 11, 2007, The Fourth Circuit Court of Appeals affirmed petitioner's conviction and sentence. In affirming the conviction, the Fourth Circuit held that (1) petitioner was not entitled to present a justification defense, (2) petitioner's Sixth Amendment right to a public trial was not implicated when the trial court excluded petitioner's wife from the courtroom during jury selection, and (3) that petitioner was not entitled to argue that his neighbor was a missing witness when the neighbor was identified as a witness by both parties, was present in the courthouse under subpoena, and was available to testify.

**C.** **Federal Habeas Corpus**

Petitioner identifies fourteen grounds which he contends entitle him to all applicable relief. Petitioner's issues are as follows:

1) "Was not allowed to present witnesses or testify (limited testimony) on my behalf";

2) "Objection to PSI statements and date of completion";

3) "Violation of double jeopardy protection";

4) "Denial of effective assistance of counsel";

5) "Tainted juror affected other jurors and were misled by prosecutions statements";

6) "Counsel was not allowed to give a closing argument";

7) "Violation of religious right not to take oaths";

8) "DEA document not submitted to support my case";

9) "Vindictive, malicious, and selective prosecution under questionable tactics";

10) "Miranda rights were never given";

11) "Court constrained defendant and did not allow him a defense";

12) "Court denied submission of documented evidence of prior illegal and criminal behavior of neighbor";

13) "Denial of right to face and question my accuser";

14) "Interference of appeal"

The Government responds in turn to each of petitioner's claims, as follows:

1) the missing witness argument was raised and answered on appeal, and petitioner is therefore precluded from raising it, again, in a collateral attack;

2) the Court properly considered and ruled upon the Pre-Sentence Investigation Report, and petitioner does not demonstrate that any of the information is unreliable, untrue or inaccurate;

3) the State of West Virginia declined prosecution, and there is no double jeopardy claim when a defendant is prosecuted in both Federal and State Court for exactly the same criminal conduct;

4) petitioner's appellate counsel died after oral argument, and petitioner does not set forth any cognizable facts that demonstrate deficient counseling or prejudice;

5) the record is absent any indication of a tainted juror;

6) the missing witness argument was raised and answered on appeal, and petitioner is therefore precluded from raising it in an altered form, in a collateral attack;

4

7) every testifying witness must swear or affirm before testifying, and petitioner did not contest swearing;

8) the Fourth Circuit ruled that petitioner was not entitled to a justification defense; additionally, the document would be inadmissible evidence;

9) petitioner does not evidence improper prosecution, moreover, petitioner's sentence is a direct result of his criminal history;

10) Miranda rights were never read because there was never a custodial interrogation;

11) the right to assert a justification defense was raised and answered on appeal, and petitioner is therefore precluded from raising it in a collateral attack;

12) petitioner cannot combine issues raised and answered on appeal in an attempt to have them reviewed again;

13) petitioner reworded and raised the missing witness issue, again, and because it was raised and answered on direct appeal, it is not reviewable on collateral attack; and

14) petitioner's appeal was perfected.

**D.** **Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's § 2255 motion be denied and dismissed from the docket because petitioner's claims are without merit.

### III. ANALYSIS

**A.** **Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving

his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

**B.     Procedurally Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

Petitioner's Claim # 1: The Court finds petitioner is barred from bringing his first claim because it is a combination of claims that petitioner raised on appeal. Petitioner claims that he was not allowed to present witnesses and that he was only permitted to present limited

6

testimony. Petitioner then notes for the Court that the issues were raised on direct appeal.

Petitioner on appeal argued that the District Court abused its discretion by preventing him from making a "missing witness" argument. Petitioner also argued on appeal that the district court erred in excluding evidence, which petitioner contended was relevant to establish a justification defense

The United States Court of Appeals for the Fourth Circuit rejected petitioner's claims, holding that a missing witness argument could not be made where the "missing witness" was identified as a witness by both defendant and the Government, was present in the courthouse under subpoena, and was available to testify. See United States v. Izac, 2007 WL 2025178 at * 4 - 5 (4th Cir. 2007). Additionally, the Fourth Circuit held that petitioner was not entitled to present justification defense. Id. at *2 - 3. Pursuant to Boeckenhaupt, 537 F.2d at 1182, petitioner is now barred from raising the same challenges in a collateral attack.

Petitioner's Claims #6 and #13: The Court finds petitioner is barred from bringing claims #6 (counsel not permitted to proceed with "missing witness" issue in closing argument) and #13 (denied right to confront the "missing witness") because petitioner challenged, on appeal, the district court's decision to preclude the "missing witness" argument. The United States Court of Appeals for the Fourth Circuit rejected petitioner's claim. See United States v. Izac, 2007 WL 2025178 at * 4 - 5 (4th Cir. 2007). Pursuant to Boeckenhaupt, 537 F.2d at 1182, petitioner is now barred from raising the same challenge in a collateral attack.

Petitioner's Claims #11, and #12: The Court finds petitioner is barred from raising claims #11 (not permitted to raise a justification defense) and #12 (prior criminal history of "missing witness" was wrongly deemed inadmissible) because petitioner challenged, on appeal, the issue

of exclusion of evidence/justification defense. The United States Court of Appeals for the Fourth Circuit rejected petitioner's claim, ruling that petitioner was not entitled to a justification defense. See United States v. Izac, 2007 WL 2025178 at * 2 - 3 (4th Cir. 2007). Pursuant to Boeckenhaupt, 537 F.2d at 1182, petitioner is now barred from raising the same challenge in a collateral attack.

C.     **Claim #2: Whether the Pre-Sentence Investigation Report Returned in Petitioner's Case Was Improperly Used to Sentence Prisoner.**

Petitioner argues that the Pre-Sentence Investigation report was improperly used against petitioner during sentencing. Petitioner argues that his criminal history does not support conviction as an armed career criminal. Additionally, petitioner seems to take issue with the date that the pre-sentence report was completed, noting that the "PSI was completed July 2003 and not undertaken as per court order in April 2006."

The Court finds that petitioner's claim is without merit. When a defendant challenges the pre-sentence report, the defendant "has an affirmative duty to make a showing that the information in the pre-sentence report is unreliable and articulate the reasons why the facts contained therein are untrue or inaccurate." United States v. Terry, 916 F.2d 157, 161 - 162 (4th Cir. 1990).

During the sentencing phase, petitioner objected to many of the pre-sentence report findings. The Sentencing Court addressed petitioner's precise objections, denying each one in turn. Specifically, the Court ruled that petitioner was not entitled to a downward departure for substantial assistance because the Government did not make such a motion pursuant to U.S.S.G. § 5K1.1. (Doc.126, p. 5). The Court noted that because petitioner was permitted to present a justification defense at trial, he was not entitled to a departure due to coercion or duress. (Doc.

126, p. 5-6). The Court ruled that petitioner's criminal history evidenced four previous violent felonies as defined by Title 18, United States Code, Section 924(e)(2). (Doc. 126, p. 6 - 7). The Court also ruled that the Armed Career Criminal Act did not violate the equal protection clause of the Constitution of the United States. (Doc. 126, p. 7 - 8). Finally, the Court ruled that sentencing petitioner under the Armed Career Criminal Act did not constitute cruel and unusual punishment under the Eighth Amendment. (Doc. 126, p. 9 - 10). The petitioner, in his motion, does not demonstrate how or why the pre-sentence report is unreliable, nor does he contest the aforementioned rulings or reasoning of the sentencing court.

Petitioner modifies or argues slightly different theories regarding the Pre-Sentence Investigation Report in his Reply.[8] In his Reply, petitioner notes that "[b]y using the older report, only the older objections were noted, which had changed in the three year interim."

Even with the more sufficiently pleaded Reply, the Court finds petitioner's arguments without merit. First, petitioner does not demonstrate that Judge Keeley's Statement of Reasons for Sentence (Doc. 126) were responses to "older objections." Second, the "newer" objections are without merit, inasmuch as petitioner's "newer" objections to the pre-sentence report are: (1) a request for an evidentiary hearing to determine Armed Career Criminal Act (A.C.C.A.) status, (2) the felony convictions prior to the date petitioner reached 18 cannot be counted towards A.C.C.A. status, and (3) the two adult burglary convictions were non–violent, "smash and grab[s]."

An evidentiary hearing is not required, nor is a defendant entitled to one, to determine if

---

[8]Petitioner's original Claim #2 was a mere two sentences, with sparse facts and conclusory statements. Petitioner's Reply as to Claim #2 sets forth specific facts and comprises nearly 2/3 of a page, single spaced.

previous convictions qualify under the A.C.C.A. Under Title 18, United States Code, Section 924(e), anyone convicted of a Section 922(g) violation (being a felon in possession of a firearm) who has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a mandatory minimum sentence of 15 years. Whether a defendant has three prior predicate convictions is properly determined–by a preponderance of the evidence–by the district court. United States v. Sterling, 283 F.3d 216, 219–20 (4th Cir.), cert. denied, 536 U.S. 931 (2002). In other words, Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), does not require prior convictions to be charged in the indictment or submitted to the jury for proof beyond a reasonable doubt. Sterling, 283 F.3d at 219-20. Accord United States v. Cheek, 415 F.3d 349, 350 (4th Cir. 2005); and United States v. Lomax, 293 F.3d 701, 704 (4th Cir.), citing Apprendi, 530 U.S. at 490, cert. denied, 537 U.S. 1031 (2002). Accordingly, the Sentencing Court made a determination that the petitioner had the three prior predicate convictions, despite petitioner's specific objections. See Doc. 126.

Petitioner's contention that prior convictions obtained before the age of eighteen are never considered, is also legally inaccurate. Unlike the computation of criminal history category under the Sentencing Guidelines, there is no temporal restriction on the age of convictions which may be considered under the Armed Career Criminal Act. United States v. Presley, 52 F.3d 64, 69-70 (4th Cir. 1995); United States v. Etheridge, 932 F.2d 318, 320-23 (4th Cir. 1991). Furthermore, the Armed Career Criminal Act provides detailed definitions of "violent felony" and "conviction" in 18 U.S.C. § 924(e)(2)(B)(ii) and (C):

> (B)the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that–

10

>                (ii) is <u>burglary</u>. . .
>                (C) the term "conviction" includes a finding that a person has committed an act of
>                <u>juvenile </u>delinquency involving a violent felony.
>
> 18 U.S.C. § 924(e)(2)(B)(ii) and (C) (emphasis added).

Petitioner concedes that his juvenile conviction was for burglary (Doc. 149-1, p. 2), and because juvenile convictions for burglary are counted under A.C.C.A, petitioner's argument is without merit.

Finally, petitioner's argument that his two adult convictions for burglary cannot be considered because, he believes them to be non-violent, is a moot objection. Recall that the Fourth Circuit in <u>Sterling,</u> 283 F.3d at 219-20, established that the Sentencing Court is bound by a preponderance standard in determining whether previous convictions are considered violent felonies pursuant to A.C.C.A. In Judge Keeley's Statement of Reasons, she specifically noted: "The Court finds that the offenses for which defendant has been convicted meet the definition of "violent felony" for purposes of the A.C.C.A." The petitioner has not alleged anything further that would disprove the Court's findings. Therefore, the Court has previously considered and ruled on the matter.

Relief should be denied because petitioner fails to meet his burden.

### D.     **Claim #3: Whether Federal Prosecution of Petitioner Violated Petitioner's Double Jeopardy Protection.**

Petitioner contends that the instant federal charge was adjudicated in Jefferson County, West Virginia; therefore, federal prosecution on the same charge violated his double jeopardy protection.

The Court finds that petitioner is simply mistaken. First, it is well settled that prosecution in both federal and state court for exactly the same criminal conduct is not double

jeopardy. See, e.g. Heath v. Alabama, 474 U.S. 82, 88 (1985); Abbate v. United States, 359 U.S. 187 (1959); United States v. Jackson, 327 F.3d 273, 295 (4th Cir.), cert denied, 540 U.S. 1019 (2003); United States v. Montgomery, 262 F.3d 233, 238 (4th Cir.)., cert. denied, 534 U.S. 1034 (2001); United States v. Christmas, 222 F.3d 141, 145 (4th Cir. 2000), cert. denied, 531 U.S. 1039 (2001); and United States v. Ianquinta, 674 F.2d 260, 264 (4th Cir. 1982). Therefore, even if petitioner were prosecuted in Jefferson County, West Virginia, his subsequent prosecution in federal court would not be a violation of double jeopardy.

Second, petitioner's contention is factually inaccurate. It appears that the Circuit Court of Jefferson County, West Virginia, on August 29, 2002, issued a Nolle Prosequi Order in petitioner's state case number 02-F-31. (Doc. 146-3).

Therefore, relief should be denied because petitioner's argument is legally and factually inaccurate.

**E.     Claim #4: Whether Counsel Rendered Ineffective Assistance.**

Petitioner contends that he was denied effective assistance of counsel because his counsel, Mr. Fred Bennet, died while working on petitioner's appeal, and that just prior to counsel's death, counsel "assured [petitioner] of a re-sentencing to a maximum of 60 months." Petitioner believes that the death of the original trial judge, the Honorable W. Craig Broadwater, impacts the effectiveness of his counsel. Finally, petitioner contends that he was denied effective assistance because he was designated to a prison in Beaumont, Texas, instead of Petersburg, Virginia Low.

Counsel's conduct is measured under the two-part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's

performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90. Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

First, The Court finds petitioner's allegations do not warrant relief because petitioner has failed to show his counsel's conduct was deficient or prejudicial. Mr. Bennet argued petitioner's case before the United States Court of Appeals for the Fourth Circuit on March 16, 2007. See United States v. Izac, 2007 WL 2025178 (4th Cir. 2007). The prosecution maintains that Mr. Bennett died on July 1, 2007, but the record does not conclusively establish the date of his death. In any event, the Fourth Circuit's decision was announced on July 11, 2007. See United States v. Izac, 2007 WL 2025178 (4th Cir. 2007). Accordingly, it appears that Mr. Bennett effectively argued petitioner's appeal. Petitioner does not establish how Mr. Bennett's death, which was subsequent to oral argument, yet before the Fourth Circuit rendered its decision, amounted to deficient counseling or prejudiced petitioner.

Second, the court fails to see the relevance of Judge Broadwater's death in a claim of

13

ineffective assistance of counsel.

Finally, petitioner's argument that his Bureau of Prison designation negatively impacted his ability to receive effective assistance of counsel is also baseless. It is well settled that the Bureau of Prisons has plenary power to designate a prisoner's place of confinement. See United States v. Dennis, 2000 WL 103032 at *1 (4th Cir. 2000)("The power to designate an inmate's place of incarceration rests solely with the Bureau of Prisons."); See also 18 U.S.C. § 3621(b)("The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility. . .").

Accordingly, it is recommended that relief be denied.

## F. Claim #5: Whether a Tainted Juror Denied Petitioner the Right to a Verdict by an Impartial and Competent Jury.

Petitioner alleges that a "tainted juror" slept through portions of the trial and admitted to using drugs. Petitioner also claims that, "[s]aid juror was removed and alternate placed [sic]. Alternate was unsure of procedural conclusions."

The Court finds petitioner's argument is without merit. It is well settled that a petitioner cannot just make bald assertions and obtain relief. In fact, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, [a petitioner] must show (1) 'cause' excusing his double procedural default at trial and on direct appeal, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Freedlander, 841 F.Supp. 734, 740 (E.D.Va 1993) citing United States v. Frady, 456 U.S. 152, 167 - 168 (1982). The Freedlander Court further noted that to meet the "actual prejudice" prong of the test, a petitioner must affirmatively "show that his attorney's failure to raise the issue worked to his actual and substantial disadvantage and infected his entire trial with error of constitutional

14

dimension." Freedlander, 841 F.Supp at 740 quoting Felton v. Barnett, 912 F.2d 92, 97 (4th Cir. 1990) and Frady, 456 U.S. at 170.

Here, petitioner makes a bald and unsubstantiated assertion. Petitioner fails to identify the "tainted juror." Petitioner failed to bring this issue to the attention of the Court at trial. Petitioner fails to explain why his attorney failed to object at trial or how petitioner was prejudiced. Because petitioner makes bald assertions and conclusions which the law does not support, relief should be denied on this claim.

**G.    Claim #7: Whether Petitioner's Rights Were Violated When He Swore an Oath Before Testifying.**

Petitioner informs the Court that he is of the Mennonite faith, and that he does not "make any oath[s] against God." Petitioner appears to conclude that when he swore to tell the truth at trial, it was against his will and a violation of his rights.

The Federal Rules of Evidence, Rule 603 specifically details the requirements for administering oaths or affirmations: "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." Recognizing that people hold very different personal beliefs, the Advisory Committee noted that "the rule is designed to afford the flexibility required in dealing with religious adults, atheists, conscientious objectors, mental defectives, and children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required." Fed. R. Ev. R. 603, advisory committee note.

If, in fact, petitioner was morally opposed to swearing, he had the option to affirm. Petitioner, conspicuously, did not object to swearing at his trial. Therefore, this Court finds that

15

petitioner's claim is not sustainable–petitioner had the opportunity to contest swearing, and testify by affirmation, and he waived that opportunity.

## H. Claim #8: Whether a DEA Document Was Not Submitted to Support Petitioner's Case.

Petitioner contends that a DEA document was not submitted to support his case. Petitioner further alleges that the document is a public record regarding his wife's termination from the employ of the DEA.

A district court should construe *pro se* petitions liberally, no matter how unskillfully pleaded. See Haines v. Kerner, 404 U.S. 519, 520 (1972). "Although the pleading requirements are construed liberally, '[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted.' 2 Moore's Federal Practice § 12.34[1][b], at 12-60 (3d ed)." Minone v. McGrath, 435 F.Supp. 2d 266 (S.D.N.Y. 2006).

Petitioner's motion is unintelligible because his factual allegations are sparse on details. Petitioner had two opportunities, in his Motion and Reply to set forth specific facts, and petitioner failed to do so. "Document not submitted to support my case" could mean that the prosecution failed to submit a document pursuant to discovery, that the court erroneously ruled on a motion in limine or motion to suppress, that counsel was ineffective in failing to introduce evidence, or dozens of other arguments. Appropriately, this Court will not make an argument for petitioner, yet will recommend that relief be denied because petitioner's claim is unintelligible.

## I. Claim #9: Whether Prosecution of Petitioner Was Selective and Vindictive.

Petitioner contends that after he was arrested, petitioner's father-in-law filed suit against

the West Virginia State Trooper that arrested petitioner "for abuse." Petitioner alleges that, in retaliation the trooper made petitioner's arrest a federal matter. Petitioner believes that when the Assistant United States Attorney learned that petitioner would be seeking a trial, the AUSA selectively and vindictively prosecuted petitioner by seeking to designate petitioner as an Armed Career Criminal.

The Court finds that petitioner's claim is without merit. Selective prosecution requires the defendant to "establish both (1) that he has been 'singled out' while others similarly situated have not be prosecuted, and (2) that the decision to prosecute him was 'invidious or in bad faith; i.e., based upon such impermissible considerations as race, religion, or the desire to exercise his constitutional rights.'" United States v. Greenwood, 796 F.2d 49, 52 (4th Cir. 1986), citing United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974).

The elements used to establish prosecutorial vindictiveness are slightly different, requiring a showing, through objective evidence, that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001); See also United States v. Goodwin, 457 U.S. 368, 380 n. 12 (1982)(noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion").

In the instant case, petitioner has not met his burden to demonstrate any prosecutorial misconduct. With regard to the allegation of selective prosecution, petitioner has not demonstrated how he was singled out, except for bald assertions of retaliation. Petitioner does not show that the prosecutor's decision to prosecute was in bad faith or based upon an

17

impermissible consideration. Even though petitioner claims that AUSA Camilletti fabricated petitioner's criminal history to enhance the sentence, petitioner offers no evidence or explanation except for restated complaints, which this Court has already addressed in petitioner's Claim #2.

With regard to the allegation of vindictive prosecution, petitioner had not met his burden. Petitioner's claim is filled with conclusory and tautological statements about malicious, vindictive, and retaliatory prosecution. However, simply reciting legal standards without setting forth a clear set of reviewable supporting facts does not demonstrate that the prosecutor acted with genuine animus towards him, or that petitioner would not have been prosecuted but for the animus.

Relief should therefore be denied on this claim.

**J.**     **Claim # 10: Whether Miranda Rights Were Properly Administered.**

Petitioner contends that he never received a Miranda warning, yet was arrested and questioned. The Government notes that petitioner was never read a Miranda warning, because there was no custodial interrogation.

Miranda warnings are required when a subject is interrogated while in custody. Miranda v. Arizona, 384 U.S. 436 (1966). "In custody" means under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984)(internal quotations omitted). Once in custody, a Miranda warning is only required prior to interrogation. Rhode Island v. Innis, 446 U.S. 291, 299 (1980).

While petitioner maintains that he was "questioned," petitioner does not contend or establish that an interrogation designed to elicit incriminating responses occurred. Petitioner does not contend that he may have incriminated himself as a part of "questioning." Petitioner

18

does not allege that any improperly obtained confessions were used against him in court. In fact, petitioner's case is wholly different than most Miranda issue cases, because here petitioner encountered the police at his home. See United States v. Izac, 2007 WL 2025178 at * 1 (4th Cir. 2007)("After the police arrived, Izac surrendered the weapon to them."). A custodial interrogation used to elicit incriminating responses would seem unnecessary.

Because petitioner has not set forth specific facts which could warrant relief, the Court recommends that relief be denied on this claim.

**K.     Claim #14: Whether Petitioner's Bureau of Prisons Designation Interfered with His Appeal.**

In petitioner's Reply, petitioner states: "This issue was previously addressed under IV heading."

Because petitioner concedes that Claim #14 is a duplicitous claim, the Court recommends that relief be denied for the reasons stated more fully above.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that petitioner's § 2255 motion be **DENIED** and dismissed from the docket. Accordingly, petitioner's Motion to Appoint Counsel (Doc. 143) is **DENIED** as moot.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. §

636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: August 7, 2008

                                           /s/ James E. Seibert
                                           JAMES E. SEIBERT
                                           UNITED STATES MAGISTRATE JUDGE